MEIER v. CONTINENTAL NATIONAL BANK.

[No. 11,733. Filed April 10, 1924. Rehearing denied June 27, 1924. Transfer denied May 14, 1925.]

1. CORPORATIONS.—*Owner of stock who has executed a blank assignment and power of attorney indorsed on the certificates, authorizing the transfer on the books of the corporation, and delivered them to another is estopped to claim ownership as against a purchaser in good faith from such other person.*— Where the owner of certificates of stock executes a blank assignment and power of attorney indorsed thereon, authorizing a transfer of the stock on the books of the corporation, and delivers the certificates to another, such owner may not thereafter assert title to such stock as against a holder of said certificates so indorsed who has acquired the same for value from or through such other person, without notice of the owner's claim, unless such holder had knowledge of circumstances which should have caused him to inquire as to the facts. p. 114.

2. CORPORATIONS.—*Statute of 1923 as to transfer of stock in corporations no indication that same law did not exist prior thereto.*—The fact that the act of 1923 (Acts 1923 p. 71), known as the uniform law for transfer of stock in corporations, merely re-enacts existing law that the owner of corporate

shares of stock who had indorsed on the certificates an assignment in blank and delivered them to another may not assert title thereto against a holder acquiring the same for value and without notice of his claim, is not an indication that such law did not prevail in this State prior thereto, since statutes are often enacted which are merely declarative of the existing law.   p. 118.

3.   CORPORATIONS.—*Assignments of shares of stock and written authority to transfer the shares on the books of the corporation, executed in blank on the backs of the certificates, 'give implied authority to holder to fill the blanks and have the shares transferred on the books of the corporation.*—Assignment in blank of shares of stock and powers of attorney in the same form authorizing the transfer on the books of the corporation, indorsed on the backs of the certificates, give implied authority to the holder of such certificates to fill the blanks in such assignments and powers of attorney, and confer upon him the right to have the legal title to such shares transferred to him on the books of the corporation.   p. 118.

4.   CORPORATIONS.—*Shares of stock may be transferred by an assignment in writing, notwithstanding a provision in the by-laws that they are transferable only on the books of the corporation.*—A provision in the by-laws of a corporation that shares of stock therein are transferable only on the books of the corporation is for the benefit and protection of the corporation, and does not preclude the transfer of the equitable ownership of such shares without complying therewith, and such transfer confers upon the transferree the right to have the legal title thereto transferred to him on the books of the corporation.   p. 318.

5.   CORPORATIONS.—*Inference that bank relied on pledge of stock in accepting pledgor as indorser on notes was justified in case stated.*—Where a bank accepted as collateral certain certificates of stock with an assignment in blank on the back thereof by the party to whom issued, the pledgor, at the same time, entering into a written agreement that the stock was to be security for any liability of his to the bank, it will be inferred that the bank relied on the pledge of the certificates in accepting him as indorser on notes evidencing a loan to a company of which he was an official.   p. 119.

6.   ESTOPPEL.—*Pledgor's conversion of stock assigned in blank on back of certificates immaterial as between pledgee and owner making such assignment.*—The fact that the pledgor of certificates of stock assigned in blank on the back thereof by the party to whom issued was guilty of conversion thereof in pledging the same to secure a loan was immaterial as between

the lender and the true owner thereof, as it was the owner's act in indorsing such assignment on the certificates that occasioned the loss. p. 119.

7. ESTOPPEL.—*Estoppel constituting a defense to the action may be shown by evidence admitted without objection although paragraph of answer pleading estoppel was insufficient on demurrer.*—The fact that a paragraph of answer pleading an estoppel is insufficient on demurrer is immaterial where the question of estoppel arises, not on the sufficiency of the pleading, but on the sufficiency of the evidence, admitted without any specific objections. p. 119.

8. CORPORATIONS.—*Assignment of stock in blank on back of certificates, written with pencil, not circumstance requiring pledgee to inquire as to pledgor's title.*—The fact that stock was transferred by blank assignments written in pencil on the back of the certificates in violation of a rule printed on the face thereof that the stock was transferable only on the books of the corporation, by the holder thereof, in person or by attorney, upon surrender of the certificates properly indorsed, would not require a pledgee of such stock to inquire as to pledgor's title thereto. p. 119.

9. CORPORATIONS.—*Absence of revenue stamps from assigned stock certificates immaterial when transfer was made by delivery and assignment in blank.*—That no revenue stamps were placed on assigned certificates of stock was immaterial when the assignment was in blank, as the revenue law requires the stamps to be affixed to the bill or memorandum of sale and not to the certificates when the transfer is by delivery and the assignment is in blank (Fed. Stats. Supp. 1919 p. 177). p. 119.

10. CORPORATIONS.—*Written demand for return of stock certificates pledged by another properly excluded when demand made after pledge.*—In an action for the recovery of certain certificates of stock by the party to whom the stock was issued, who had transferred them to another by delivery and assignment in blank, and the latter had pledged them to a bank in securing a loan, the court properly excluded a written demand on the bank for the return of the certificates which contained a statement that the stock had been merely loaned to the pledgor to be used as collateral in obtaining a loan, with a specific agreement that the stock was to be returned to the lender when the loan had been paid, which demand was not made until more than two months after the pledge to the bank, as the bank could not be bound by the statements therein. p. 121.

11. APPEAL.—*Appellant's brief must contain objections to admission of evidence to present any question as to such ad-*

*mission.*—No question is presented for review as to the admission of evidence when appellant's brief does not contain the objections made to the admission thereof.   p. 122.

From Shelby Circuit Court; *Harry C. Morrison,* Judge.

Action by Lewis Meier against the Continental National Bank of Indianapolis.   From a judgment for defendant, the plaintiff appeals.   *Affirmed.*   By the first division.

*Wray & Sullivan* and *Bachelder & Bachelder,* for appellant.

*John W. Holtzman* and *Silverburg, Bracken & Gray,* for appellee.

BATMAN, J.—This is an action by appellant against appellee to recover possession of certain certificates of capital stock in the Meier Packing Company.   The answer to appellant's complaint consists of two paragraphs, the first being a general denial.   In the second, appellee admits that it has possession of the certificates of stock in question, and alleges that it rightfully holds the same as collateral security for a liability of one Thomas C. Boland, as an indorser on certain promissory notes of the Permalife Storage Battery Company.   Appellant filed a reply to said second paragraph of answer, in which he alleges that said certificates of stock were loaned to said Boland, for the purpose of being used as collateral security for personal loans made or being made to him by appellee, and for such purpose only. On a trial of the cause by the court, judgment was rendered in favor of appellee.   Appellant filed a motion for a new trial, which was overruled, and this appeal followed, based on the adverse ruling stated.

Appellant's contention that the court erred in overruling his motion for a new trial is based in part on the ground that the decision of the court is not sustained

by the evidence. An examination of the record discloses substantial evidence tending to establish the following facts: Appellee was a corporation engaged in the banking business in the city of Indianapolis. Appellant and one Thomas C. Boland were business men of said city, the latter being a customer of appellee. Appellant was the owner of ninety-four shares of the capital stock of the Meier Packing Company, a corporation, evidenced by the certificates described in his complaint, each of which had been issued to him, as appears on the face thereof, with a provision that such stock is transferable only on the books of the corporation by the holder thereof, in person or by attorney, upon the surrender of the certificate. Said Boland requested appellant to make him a personal loan of said certificates of stock. Appellant complied with said request, by signing the following blank form on the back of each of said certificates, and then delivering the same to said Boland:

"For value received, ...... hereby sell, assign and transfer unto ............................ shares of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint ............................ to transfer the said stock on the books of the within named corporation with full power of substitution in the premises. Dated..................19....
Lewis Meier."

Said Boland thereafter delivered said certificates, bearing the assignment stated, to appellee, and at the same time executed to it an agreement, which contained a description of said certificates, and recited, among other things, that the same were transferred and delivered to appellee, for the following purposes: "As collateral security for any liability of the said Boland to said bank occurring at any time for the payment of

any and all sums, however evidenced, whether by promissory note, draft, overdraft or otherwise, whether as maker, indorser or surety, now owing or which may hereafter be owing to said bank by said Boland, either individually or jointly, or jointly and severally with any other person, or persons, to include any and all renewals or promissory note or new promissory notes or other obligations accepted in payment of former obligations." Said Boland thereafter became indebted to appellee in the sum of $32,500, as an indorser on three promissory notes of the Permalife Storage Battery Company, a corporation of which he was the secretary and treasurer. One of said notes was for $15,000, and is wholly unpaid. Appellant made demand of appellee for the possession of said certificates, which was refused. There is also some evidence tending to show that at the time said Boland obtained possession of said certificates, he became the absolute owner of the stock they represent, through an exchange therefor of stock in the Permalife Storage Battery Company, certificates of which were delivered to appellant at the time.

We need not rest our decision as to the sufficiency of the evidence on the fact last stated, as we reach the same conclusion whether we consider the evidence as establishing a transfer of the title to the stock in question or a mere loan of the certificates, as appellant contends. There is a general rule prevailing in many jurisdictions to the effect that where the owner of corporation stock, evidenced by a certificate issued to him by such corporation, executes a blank assignment and power of attorney indorsed thereon, authorizing a transfer of the stock on the books of the company, and thereafter delivers said certificate, with such executed assignment and power of attorney to another, such owner may not thereafter assert title to such stock as against a holder of said certificates so

indorsed who has acquired the same for value from or through such other person, without notice of the owner's claim, unless such holder has knowledge of circumstances which should have caused him to inquire as to the facts. 14 C. J. 675 and 679; 4 Thompson, Corporations (2d ed.) 755; *McNeill* v. *Tenth National Bank* (1871), 46 N. Y. 325, 7 Am. Rep. 341; *Wood* v. *Smith* (1880), 92 Pa. 379; *Moore* v. *Metropolitan National Bank* (1873), 55 N. Y. 41, 14 Am. Rep. 173; *Shattuck* v. *American, etc., Co.* (1903), 205 Pa. St. 197, 54 Atl. 785, 97 Am. St. 735; *Talcott* v. *Standard Oil Co.* (1912), 149 App. Div. 694, 134 N. Y. Supp. 617; *Brewster* v. *Sime* (1871), 42 Cal. 139; *Otis, Admr.,* v. *Gardner* (1883), 105 Ill. 436; *Merchants Bank* v. *Williams* (1909), 110 Md. 334, 72 Atl. 1114; *Baker* v. *Davie* (1912), 211 Mass. 429, 97 N. E. 1094, 37 L. R. A. (N. S.) 944; *King* v. *Mellon Nat. Bank* (1909), 227 Pa. St. 22, 75 Atl. 832; *O'Neill* v. *Wolcott Mining Co.* (1919), 174 Fed. 527, 98 C. C. A. 309, 27 L. R. A. (N. S.) 200; *Gray* v. *Fankhauser* (1911), 58 Ore. 423, 115 Pac. 146; *Crawford* v. *Dollar, etc., Co.* (1911), 236 Pa. St. 206, 84 Atl. 694.

The reasons for such rule are given in the cases cited, and from which we quote the following:

"It must be conceded, that as a general rule, applicable to property other than negotiable securities, the vendor or pledgor can convey no greater right or title than he has. But this is a truism, predicable of a simple transfer from one party to another where no other element intervenes. It does not interfere with the well-established principle, that when the true owner holds out another, or allows him to appear, as the owner of, or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title

or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence he caused or allowed to appear to be vested in the party making the conveyance. * * * Simply intrusting the possession of a chattel to another as depositary, pledgee or other bailee, or even under a conditional executory contract of sale, is clearly insufficient to preclude the real owner from reclaiming his property, in case of an unauthorized disposition of it by the person so intrusted. * * * But if the owner intrusts to another, not merely the possession of the property, but also written evidence, over his own signature, of title thereto, and of an unconditional power of disposition over it, the case is vastly different. There can be no occasion for the delivery of such documents, unless it is intended that they shall be used, either at the pleasure of the depositary, or under contingencies to arise. If the conditions upon which this apparent right of control is to be exercised, are not expressed on the face of the instrument, but remain in confidence between the owner and the depositary, the case cannot be distinguished in principle, from that of an agent who receives secret instructions qualifying or restricting an apparently absolute power." *McNeill* v. *Tenth National Bank, supra.*

"The rights of a bona fide holder, as against the true owner of the stock, to whom the apparent owner has either sold or pledged, do not depend on a negotiable character in the certificates, but rest on another principle; namely, that one who has conferred upon another by a written transfer all the *indicia* of ownership of property, is estopped to assert title to it as against a third person, who has in good faith purchased it for value from the apparent owner.' * * * If the

owner of the stock voluntarily gives certificates with blank assignment and power of attorney to make transfers, to his brokers, who betray the confidence reposed in them, such owner must suffer the loss, rather than innocent strangers whose money the brokers were thereby enabled to obtain. The principle applies to pledges of stock, and one who purchases from the pledgee may hold against the pledgor. And if the pledgee pledge it to secure payment of his own debt, the second pledgee may hold it as security till his debt be paid. 'A person loaning money on such certificate and power, has a right to believe that the borrower from whom he receives them has an absolute right to pledge the stock.' By commercial usage, a certificate of stock accompanied by an irrevocable power of attorney, either filled up or in blank, is, in the hands of a third party, presumptive evidence of ownership in the holder. And where the party in whose hands the certificate is found is a holder for value, without notice of any intervening equity, his title cannot be impeached." *Wood* v. *Smith, supra.*

"One reason why an owner of corporate shares or of goods and chattels, who has conferred upon another the apparent ownership, without transferring to him a valid title, was held precluded from asserting his title, against a *bona fide* purchaser from such apparent owner, is that such purchase was made upon the faith of the title which he had apparently given, and that it would be contrary to justice and good conscience to permit him to assert his real title against an innocent purchaser from one clothed by him with all the indicia of ownership and power of disposition. * * * Another reason is that it presents a proper case for the application of the legal maxim that, where one of two innocent parties must sustain a loss from the fraud of a third, such loss shall fall upon the one, if either, whose

act has enabled such fraud to be committed." *Moore* v. *Metropolitan National Bank, supra.*

Appellant, however, contends that the rule stated does not prevail in this state, but has failed to cite a case where it has been so declared, and our investigation has not disclosed any. He calls attention to the act of 1923 "concerning the transfer of shares of stock in corporations" (Acts 1923 p. 71), and asserts that if the rule stated prevailed in this state at the time of the transactions involved in this action, then the greater portion of said act was needless, as it would be merely a re-enactment of existing law. We attach no significance to that fact, as we know that statutes are often enacted which are merely declarative of law already in force in this state, but, at most, it is not of such weight as to lead us to hold that the rule stated should not be applied to transactions occurring before the act of 1923 became effective, if justice requires it.

In the instant case, appellant executed the assignments and powers of attorney in blank, as appears from the indorsements on the certificates in question, and thereafter delivered the same to Boland. That act carried with it implied authority to Boland to fill in the blanks in such assignments and powers of attorney, and clothed him with all the indicia of at least an equitable title to the stock, coupled with the right to have the legal title thereto transferred to him on the books of the corporation, as provided on the face of the certificates, such provision being generally held to be intended solely for the protection of the corporation. *Hill* v. *Kerstetter* (1909), 43 Ind. App. 1; *Boone* v. *Van Gorder* (1905), 164 Ind. 499, 108 Am. St. 314; *McAllister* v. *Kuhn* (1877), 96 U. S. 87, 24 L. Ed. 615; *McNeill* v. *Tenth National Bank, supra; Gray* v. *Fankhauser, supra; Merchants Bank* v. *Williams, supra; Shattuck* v. *American, etc., Co., supra; O'Neill* v. *Wol-*

*cott Mining Co., supra; Otis, Admr.,* v. *Gardner, supra; Baker* v. *Davie, supra.* Under such circumstances, appellee was warranted, under the rule stated, in assuming that Boland was the owner of such stock, and in dealing with him accordingly, unless circumstances were present which should have caused it to inquire as to the facts.

Appellant contends that even if the court should hold that the rule in question is to be recognized and applied in this state in proper cases, the judgment in the instant case must be reversed nevertheless, because of the following reasons: (1) There is no evidence that appellee relied on the pledge of the stock, evidenced by the certificates in question, in accepting the promissory note of the Permalife Storage Battery Company for $15,000 on which said Boland is an indorser; (2) the evidence shows that said Boland, in pledging the stock in question to appellee, under the written agreement in evidence, was guilty of a conversion thereof; (3) the rule stated is based on the principle of estoppel, which is not available to appellee, because its affirmative paragraph of answer fails to state sufficient facts to constitute such a defense; (4) the evidence discloses circumstances which should have caused appellee to make inquiry as to said Boland's right to pledge said stock. The first reason stated is not effective for the purposes claimed, as the fact that appellee secured from Boland a pledge of the stock in question, under the broad provisions shown by the agreement under which it was made, affords a basis for a reasonable inference that appellee was relying, in some measure, at least, on the pledge of such stock, in accepting him as an indorser on notes evidencing loans subsequently made to the Permalife Storage Battery Company. Appellant cites the case of *Peoples State Bank* v. *Kelly, Rec.* (1922), 78 Ind. App. 418,

136 N. E. 30, in support of the second reason stated, but it is not controlling in the instant case, in the application of the equitable rule involved, where one of two innocent persons must suffer by the acts of a third, as, in that case, not merely a conversion was shown, as appellant states is true in this case, but the commission of a crime as well. Appellant's third reason seems to be based on an assumption that the principle of estoppel cannot be applied as a defense in an action unless there is a paragraph of answer on that theory sufficient to withstand a demurrer. Such an assumption is unwarranted, where, as here, there is a paragraph of answer, drawn on such theory, and the question of estoppel arises, not on the sufficiency of the pleading but on the sufficiency of the evidence, admitted without any specific objections shown by the brief of the complaining party, as is true in the instant case. *Prudential Ins. Co.* v. *Ritchey* (1918), 188 Ind. 157; *Doering* v. *Schneider* (1920), 74 Ind. App. 294. Appellant supports his fourth reason by a citation of the following facts: (1) The certificates show on their face that each was issued to appellant, and that the stock evidenced thereby is transferable only on the books of the corporation, by the holder thereof, in person or by attorney, upon surrender of the certificates properly indorsed; (2) the indorsement of appellant on each is in blank, and his signature thereto is in pencil; (3) no revenue stamps appear on the certificates, as the law requires, where a sale of corporation stock is had by transfer of a certificate. The fact that the blank indorsement on each of said certificates was executed by appellant in pencil is of no consequence. The remaining facts, appearing in the first and second statements above, are not of such a character as to have placed on appellee a duty to inquire as to Boland's title to the stock in question, as is clearly shown by what we have

hereinbefore said in discussing other questions, and by the authorities from which quotations are made. The third fact is evidently relied upon under a mistake as to what provision of the revenue law is applicable, as the following requirement thereof appears to be controlling in the instant case: "That in case of sale * * * where the transfer is by delivery of the certificate assigned in blank there shall be made and delivered by the seller to the buyer a bill or memorandum of such sale, to which the stamp shall be affixed." Fed. Stats. Supp. 1919 p. 177. Appellant has failed to point out any fact which required appellee to make inquiry as to Boland's title to said stock, and our examination of the record fails to disclose any.

Appellant contends that the court erred in refusing to admit certain evidence offered by him, consisting of a written request on appellee, dated November 10, 1919, and executed by "Boland, Barrett & Potter by Thos. C. Boland," for the delivery of the stock in question to appellant, which stated in substance, that said stock had been loaned to Boland by appellant to be used as collateral in securing a loan, with a specific agreement, that the stock was to be returned to appellant when such loan had been fully paid, as is now the case. This written request is signed by persons who are not parties to this action, bears a date more than two months later than the date of the note of the Permalife Storage Battery Company, indorsed by Boland after the execution of the pledge in question, and contains a statement of an agreement between appellant and Boland, by which appellee could not be bound. For these reasons, the offered evidence was properly excluded.

Appellant complains of the admission of certain evidence, but as he has failed to set out in his brief what

objections, if any, he made thereto at the time
11. it was offered, no question in that regard is presented for our determination. *Irvine* v. *Baxter Stove Co.* (1919), 70 Ind. App. 105.

Failing to find that the court erred in overruling appellant's motion for a new trial, the judgment is affirmed.